**SIBER TELECOM, INC., Plaintiff,**

v.

**ARIANA TELECOMMUNICATIONS, INC., et al., Defendants.**

No. Civ. 01–176–BS.

United States District Court, D. Maine.

May 1, 2002.

Thomas F. Adams, Thomas F. Adams, P.A., Caribou, ME, for Siber Telecom Inc, plaintiff.

## ORDER GRANTING DEFAULT JUDGMENT

SINGAL, District Judge.

Siber Telecom, Inc. ("Siber") sued Ariana Telecommunications, Inc. ("Ariana") and its owner, personally, for negligence, breach of contract and conversion arising out of a business dispute. Presently before the Court is Siber's Motion for Default Judgment (Docket # 5). Based on the following discussion, the Court GRANTS Siber's Motion and enters DEFAULT JUDGMENT.

### I. LEGAL STANDARD

If a defendant fails to file a responsive pleading to claims brought against him, the Court will enter default in the plaintiff's favor. *See* Rule 55(a). Once default has been entered against a defendant, the defendant "is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Ortiz–Gonzalez v. Fonovisa,* 277 F.3d 59, 62–63 (1st Cir.2002); *see also Libertad v. Sanchez* 215 F.3d 206, 208 (1st Cir.2000) (where default has been entered, plaintiff's factual and legal claims must "be taken as true and ... be considered established as a matter of law.") (citing *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 13 (1st Cir.1985).). Applying this standard, the following facts are taken as true.

### II. FACTS

Plaintiff Siber Telecom, Inc., is a Maine corporation with its principal place of business in Caribou, Maine. It is in the business of printing and selling prepaid telephone cards. Defendant Ariana Telecommunications is a Delaware corporation with its principal place of business in Los Angeles, California. Its business is known as telephone "switching"—the pur-

chase and resale of long-distance telephone capacity. Defendant Sam (a.k.a.Samir) Khalaf is the owner and president of Ariana, and is a resident of California.

In October 1999, Ariana and Siber entered into a business arrangement by which Siber would purchase Ariana's switching services and resell them to consumers in the form of prepaid telephone calling cards. Consumers would dial a toll-free telephone number printed on the card that was answered by Ariana's "switch," a computer that controlled access to long-distance telephone networks. By entering a "PIN" number printed on the calling card, the consumers would gain access to the switch and could place long-distance telephone calls at a per-minute rate identified on the card.

Siber purchased access to Ariana's switch by paying for lists of PINs that had been programmed into the switch. Siber would then print these so-called "live" PINs on the calling cards, and sell the cards at retail locations such as convenience stores and gas stations in Maine. Over the course of their business relationship, Siber purchased approximately twenty-seven lists of PINs from Ariana, paying for each by check. Also, at the start of their business dealings, Siber paid Ariana a ten thousand dollar ($10,000) "good faith deposit" against future PIN purchases, which Ariana still possesses.

In the early going, Siber enjoyed substantial success selling prepaid calling cards with Ariana's PIN numbers on them. After several months, however, Siber began receiving complaints from consumers that its cards were not functioning properly. Users protested that calls made with the card were being cut off unexpectedly or rejected entirely by Ariana's switch. Upon investigating, Siber discovered that Khalaf was systematically deleting PIN numbers sold to Siber from the switch.

Consumers who dialed the toll-free number and entered the PIN on their calling card were being denied access to the switch, because the switch no longer recognized the PIN they entered as valid.

To mollify its angry customers, Siber distributed replacement cards bearing forty thousand dollars ($40,000) worth of Ariana PINs without charge. Ariana subsequently terminated its switching services. Siber is still in possession of thousands of calling cards with unusable Ariana PIN numbers printed on them for which Siber paid Ariana thirty-five thousand one hundred sixty-five dollars ($35,165).

Siber sued Ariana and Khalaf, personally, for negligence, breach of contract and conversion. When Ariana and Khalaf failed to appear, the Court entered default in favor of Siber (Docket # 2) pursuant to Rule 55(a), and Siber moved for default judgment (Docket # 5). The Court held a hearing pursuant to Rule 55(b)(2) to determine the nature and extent of Siber's damages. Ariana and Khalaf did not appear at the hearing.

## III. CALCULATION OF DAMAGES

Plaintiff's claims of negligence, breach of contract and conversion are established as a matter of law. *See Ortiz–Gonzalez*, 277 F.3d at 62–63. Thus the Court's only task is to calculate the damages arising from each claim. At the hearing, Plaintiff submitted evidence establishing the value of the "good faith" deposit it paid to Defendant Ariana, and the amounts it paid Defendant Ariana for PIN numbers that ultimately did not function properly or were distributed to customers without charge. Plaintiff also attempted to demonstrate lost profit damages, but because it failed to do so with any certainty, the Court declines to award them.

### A. Negligence

Defendant Khalafs actions, individually and as an agent for Ariana, breached Defendants' duty of care to Plaintiff and proximately caused Plaintiff's losses. *See generally* Restatement (Second) Torts, § 281 (1965). The loss in value of Plaintiff's unsold telephone cards, and losses resulting from Plaintiff's distribution of cards free of charge to dissatisfied customers were reasonably foreseeable consequences of Defendant Khalaf's deletion of PIN numbers from the Ariana switch. Thus, both Defendants are liable for those losses, which total seventy-five thousand one hundred sixty-five dollars ($75,165).

### B. Breach of Contract

Plaintiff and Defendant Ariana contracted for the sale of Ariana's switching services. Defendant Ariana failed to provide the switching services it promised, but retained the payments Plaintiff made under the contract. Defendant Ariana is therefore liable to Plaintiff for restitution in the amount of seventy-five thousand one hundred sixty-five dollars ($75,165). *See generally* Restatement (Second) Contracts, § 370 et seq. (1979). These damages are duplicative of those recoverable by Plaintiff from Defendant Ariana under the negligence theory discussed above.

### C. Conversion

Defendant Ariana remains in possession of a "good faith deposit" of ten thousand dollars ($10,000) paid by Plaintiff. Defendant Ariana does not have any legal entitlement to that sum, and therefore is liable to Plaintiff for restitution in that amount. *See generally* Restatement (Second) Torts, § 222A (1965).

### IV. CONCLUSION

In accordance with the foregoing, the Court GRANTS Plaintiff's Motion for De-fault Judgment and enters JUDGMENT in favor of Plaintiff in the following amounts:

(1) The Court finds Defendant Ariana Telecommunications, Inc., solely LIABLE to Plaintiff in the amount of ten thousand dollars ($10,000);

(2) The Court finds Defendants Ariana Telecommunications, Inc., and Sam (a.k.a.Samir) Khalaf personally, jointly and severally LIABLE to Plaintiff in the amount of seventy-five thousand one hundred sixty-five dollars ($75,165).

SO ORDERED.